On the merits, this case is very simple. The only real question is whether the Workers' Compensation Commission's original decision of November 5, 2007, finding that the defendant's employer employment was against the manifest weight of the evidence. This case involves injuries sustained while the defendant was climbing stairs at work. Following the analysis provided by Justice Rutkowski and his concurrence in Illinois Consolidated Telephone, the risk associated with climbing those stairs is a neutral risk. Whether an injury caused by a neutral risk arises out of a claimant's employment is a question of fact for the Commission, and the Commission's decision will not be disturbed unless it is against the manifest weight of the evidence. In the incident cases I will discuss, there is ample evidence to support the Commission's decision that the defendant's injuries of August 5, 1999 did not arise out of her employment. Therefore, Judge Taylor was wrong in reversing the Commission's decision, and the Commission's decision of November 5, 2007 should be reinstated by this Court. To analyze the facts of this case, we need to look at whether the Commission was correct in holding that the claimant did not face an increased qualitative or quantitative risk from her employment when she fell on the stairs at work on August 5, 1999. How often does a person have to go up and down the stairs for it to become a quantitative risk? I don't believe that's a matter of law, Your Honor. I believe that's up to the Commission to decide, and in this case, the only evidence that was produced on that issue, quantitative risk, was that there were two floors on this building, a basement and upstairs, that there were certain she was in the basement with her boss. She testified she generally worked downstairs. There were a couple things upstairs she had to clock in. There was a washroom, and that's it. There's no more testimony that was offered regarding how often she went up and down the stairs. Well, there was testimony that a regular part of her job duties required that she go up and down those stairs. I think that the reason why the... Is that correct? I would say that she said that she... There was nothing about how much she had to walk up and down the stairs. The actual testimony was she had to clock in, and if she wanted to use the bathroom or anything upstairs, she had to go up there. So at least every day to clock in, she had to go upstairs. Sure, she had to go upstairs. If she went to the bathroom, she had to go upstairs. And some other duties as well. Right, and as Justice Rakowski points out in Illinois Consolidated Telephone, the general rule, because the general public walks up and down stairs, and we don't know how often the general public walks up and down stairs, the general rule is that injuries occurring while walking up and down stairs are not compensable unless the injured worker can establish some type of additional risk, either qualitative or quantitative. If part of your job is going up and down the stairs, why wouldn't the risk of falling down the stairs become part of the risk of your employment? The case is... There's no case law that says that walking... The law that this court has established is that walking up and down stairs creates a risk of no greater danger than the general public. You're saying in and of itself. In and of itself. Right. So basically, and that's what the commission seemed to hang its head under, saying there's no evidence of any connection between a defect or some problem with the stairway and the fall. Absolutely no evidence of qualitative risk. And then what Justice is talking about as far as quantitative risk, it's not... The respondent is not responsible for what was put into the record. There could have been all kinds of testimony about how often she had used the stairs. It's her burden of proof. The bottom line is, there's almost no evidence of how often she had used the stairs. And the only evidence in the entire record, it's a huge record, the only evidence in there is what I just said. A couple of references to the way the building is made up, to the fact that she had the clock in, and that there was a couple of parts of the office that were upstairs. That's it. And the burden of proof here is on the petitioner. The commission looked at the quantitative risk, and they decided, based on the limited evidence that was presented, they decided that the burden of proof to establish that the petitioner's injuries arose out of her employment was not carried by the petitioner. All Judge Taylor did was look at the same facts and substitute his judgment for that of the commission. And as we know, you can't do that. He did not establish what... The bottom line is, the quantitative risk has to be proved by the petitioner, and in this case, there's almost no evidence of it. And the commission digested that, looked at it, and under the Manifest Weight Standard, as the two attorneys went into in the first case today, under this, this is a perfect case where the Manifest Weight Standard established that the case should not have been overturned based on quantitative risk. And I'll briefly address qualitative risk as well, because I think it's something that needs to be discussed. The only thing on the record about the qualitative risk that Fisher argued was that the lighting, there was a light above the basement door, but there was a light above the landing where she fell that was on, and there was a flusher right at the top. Then there was an issue regarding some, the way the stairs were, and that there was in fact some problems with the treads, but the record established that where she fell, that was not an issue. And the court found that she admitted that she wasn't in a rush at the time, her vision was not obstructed, there were no foreign bodies or trash on the steps, and she was not distracted in any way. So there was a thorough evaluation by the commission of the qualitative risk issue, and correctly, there's all kinds of evidence in the record establishing that the commission's decision on that issue was correct, and certainly was not against the Manifest Weight evidence. So the bottom line is you've got the qualitative risk analysis by the commission, the quantitative risk analysis by the commission, evidence supporting both, it's a clear Manifest Weight standard. Now, there was an issue that Judge Taylor brought up about the carrying of the legal size folder. I wanted to, and he cited Knox County, which this court ruled, and I wanted to indicate that there are three reasons why Knox County is distinguishable as it applies to this case. First, in Knox County, unlike this case, the commission awarded benefits. So this court did not find, as a matter of law, that carrying a folder is enough to establish a risk. Instead, they simply said that the commission in Knox County looked at the fact that the petitioner had a Coke in one hand and her purse in the other with some things she needed for the CPR seminar. They looked at that and said that they felt their analysis was that that increased the And therefore, they found it in favor of the petitioner, and this court said that they couldn't reverse because that's not against the Manifest Weight of the evidence. What's the difference between that and carrying a folder? Well, I mean, you know, under the Manifest Weight standard, there's a huge difference. Can I ask you a question? Sorry. Okay. I mean, bottom line, the commission went one way carrying a Coke. Now they go the other way carrying a folder. That's really the only difference, isn't it? Well, I would argue that there are all kinds of cases in which you could argue that the commission went one way or another. That's their purview when they look at the facts. And that's why we have a Manifest Weight standard that protects their decisions on those issues, as long as there's some evidence. They certainly could have went the other way on this case, and they certainly could have went the other way on Knox. But the bottom line is we have a Manifest Weight standard, and the circuit court and or this panel can't substitute its decision on those facts for that of the commission. I'll also point out that this court has never, as a matter of law, found that the carrying of some item is enough, as a matter of law, to establish risk. The closest, I think you might say, was in the Biscoe case. But let's contrast those two cases. And you didn't say it as a matter of law. You said there that clearly that increased the risk. And what you were talking about there was three foot, three inch long knives that were six and a half inches wide and together weighed over 50 pounds. And you still didn't say that as a matter of law, carrying something in and of itself creates a qualitative risk. Instead, it's up to the commission to decide that based on the evidence. Here you have a single file folder. The other way that the Knox County case is distinguishable, to follow up a little bit on I think where you were going, Your Honor, is that in that case, both hands were carrying things. So the testimony and the finding of the commission was that the petitioner was unable to use the handrail because both hands had items in them. Here, the record is very clear that she was holding the folder in her left hand, and actually the testimony is that her right hand was on the handrail. So not only could she use the handrail, she was at the time that she was injured. And the commission looked at those facts and decided that the carrying of the folder did not create an increased qualitative risk. And as we said before, the commission also ruled that there wasn't a quantitative risk. And I think we haven't mentioned it here in oral argument, but the key here is that the commission did make a finding that the way the petitioner fell was her standal got caught on the stair. And that's how she fell. Did the petitioner herself ever express a reason for the fall? Did she ever specify herself a reason for the fall? She did. Right in the record, she says that her foot got caught on the underside of the stair and she fell. Okay. It's clearly an explained fall. It's clear in the record that she knows exactly what happened. She had a sandal on. It got caught on the stair and she fell. Now The sandal got caught under there or her foot got caught under there? Well, I guess I have to say that the way the record reads, I would say that the same and the foot with the sandal on it got caught under the tread and she fell. And, you know, I will address Judge Taylor made some mention about the commission claiming some type of design defect of the sandal. First of all, I don't think that's in the record. But I also think that's irrelevant. The bottom line is she chose what shoes to wear. She was wearing shoes. Her employer, there's no evidence that her employer told her what to wear. And her sandal got caught with her foot under the stair and she fell. There's just no increased quantitative or qualitative risk here. And we're dealing with a manifest weight standard. And clearly there's all kinds of evidence supporting the commission's findings in both relative to the qualitative and quantitative findings. And therefore, the commission's decision of November 5, 2007 should be reinstated because Judge Taylor's finding that it was against the manifest weight of the evidence was incorrect. I have a minute I'd like to briefly, I'd actually like to rest on what I put in my briefs about the meritless waiver argument raised by defendant in her reply brief. But since the defendant is so fixated on the argument, I believe I should briefly address it. For the last two years and eight months, Roadway's intent in this appeal could not be more clear and more focused. We're asking this court to do one thing, to review the commission's November 5, 2007 decision to determine whether or not it was against the manifest weight of the evidence. There are all kinds of examples in the record of Roadway's intent on that specific issue. Roadway's original appeal on October 6, 2009 of Judge Taylor's decision, when this court dismissed it properly for being interlocutory, it even mentioned Roadway's interest in having that decision reviewed. After the commission entered its second order, consistent with Judge Taylor's decision, Roadway once again confirmed its intention by filing an appeal to the circuit court. When Judge Murray issued his decision at the circuit court level, Roadway again made clear its intent by filing an appeal to this court, and in the notice of appeal, it is clear what Roadway's intent is. In addition, in all the briefs filed, Roadway makes her intent extremely clear. Despite the unequivocal intent of Roadway throughout the appeal process, the defendant claims Roadway waived its right to pursue a review of this court by this court of the commission's November 5, 2007 decision. A way of background, Judge Murray asked both sides to file a single document outlining the issues before Judge Murray. In paragraph one of that document, Roadway again states its unequivocal intent to appeal Judge Taylor's ruling. In paragraph three, Roadway again states its intent. What counsel did or what the petitioner did is cherry pick one portion of one statement and mischaracterize it. What Roadway specifically said is as far as what is before this court at this time, defendant asserts that the findings of the Workers' Compensation Commission in its most recent decision issued on September 20, 2010 is not erroneous and not against the weight of the evidence. The defendant, however, preserves its right to contest the commission's findings consistent with circuit court's October 1, 2009 order that the plaintiff's injuries arose out of her employment with the defendant. Defendant's waiver argument fails for several reasons. First, as discussed, Roadway could not be clearer what its intent was in this appeal. Under law, the case doctrine, the issue of whether the defendant's injuries arose out of her employment was not an issue before Judge Murray since once Judge Taylor issued his ruling, the only court that had the ability to review that decision is this court. And here we are two years and eight months later to have that done finally. So to make an argument that somehow something was waived in front of Judge Murray that Judge Murray could not have ruled on is not logical. The judicial admission arguments, I can't really even quite understand it. Thank you. Thank you. Thank you. Counsel, please. May it please the court, counsel, I don't know of any case law that says that the Roadway's intention is relevant on the issue of procedural default or waiver. In this case, they did not raise this issue in the immediate court below, and every case that I read says that if you don't raise it in the court below, it's waived. Now, this court, under the case law, is not bound by that. What did you want them to raise in the court below? That the original decision in the court below was wrong? Yeah, I think they should have. The argument that they're raising here, the argument that they're raising here, they should have raised. Circuit court is not a reviewing court of the circuit court. Now, let's understand what procedurally happens here. The circuit court reverses the commission and remands it, finding that there is a benefits are to be awarded. So the circuit court does what it's told to do, and it awards those benefits. The Supreme Court has said when that happens, the issue of the propriety of the circuit court's original order is before us on appeal from the subsequent order. He doesn't have to do anything other than raise it here. He certainly can't raise it in the circuit court. You want him to raise in the circuit court that the circuit court was wrong in its first decision. Is that the essence of your argument? No. The essence of my argument is that I don't know of any cases that say that you can skip a process in the appellate review process. The Supreme Court says that it's reviewable here on an appeal from the subsequent order. If that's correct, then I stand corrected. I mean, that's what they've said. Okay. On the merits, what counsel failed to mention was the fact that in this particular case, not only did the petitioner have increased risk of going up and down these stairs because her office was in the basement and all the other facilities were upstairs, lavatories, time clocks, vending machines. And in fact, at the time of her accident, she indeed was holding on to the braille with her one hand, but she was holding work-related folders against her chest with her other hand. Therefore, when she tripped, for whatever reason, you don't need a defect in order to trip like in a personal injury case. When she tripped, she could not break her fall by extending the hand that was holding the folders. The case that counsel referred to where somebody was going downstairs with some heavy knives, that was a weight-related thing. This is not a weight-related thing. The weight of the folders is irrelevant. Counsel, was there any testimony in the record as to how many times a day the claimant had to traverse the stairs other than she, you know, had to use the stairs to go upstairs? I mean, that much was clear. I don't think that's a dispute. Was there any testimony as to the frequency at which she had to use the stairs in the course of the day? Yes, from a standpoint that her office was downstairs and she had to go upstairs to these other facilities. Was there a number affixed to that? Like she went up five times, ten times? Ten times, 20 times, right. No. It was just that the other facilities that she regularly had and routine had to use were upstairs. Well, wouldn't that have been relevant on the issue of whether she was exposed to a greater risk than the general public was exposed to, the number of times she had to go? Wouldn't that be relevant on that issue? Sure, it would be relevant. It should be relevant, but not necessary because there was evidence that the other as part of her employment, the time clock, the lunch room, things of that nature. She was taking, as a matter of fact, work-related folders to a terminal manager in the upper floor, responding as the one who chose to put her office downstairs and increase her risk of employment. Thank you very much. Just to clear up the record, it's not folders. It's a single legal size file folder that she's carrying. It is not folders. Secondly, there is – But you do agree she was taking it upstairs to a terminal manager as part of her job. She was. And I will say that the only thing in this record establishing how many times she used the stairs that day was that. This one time she was going up. By the way, her boss was downstairs. This was the terminal manager. There's no testimony about – this could have been the one time she had to bring something to the terminal manager. There's just no – it's not – there's no testimony about how frequently she used the stairs. And the bottom line is the law is just – that's why you're in no danger to the general public when you're using the stairs. At our houses, we probably use the stairs a few times. There's got to be testimony about how frequently they used the stairs in order for the petitioner to carry their burden on the issue of whether or not there's an increased quantitative risk. And that testimony just isn't in this record. Well, in any case, even if there were testimonies to how frequently she used the stairs, it would be up to the commission to determine whether that created a quantitative risk of harm greater than that which the general public is exposed to, isn't it? I think my argument has just been stated more eloquently than I can, so I'm going to sit down. Thank you. The court will take the matter under advisement for disposition.